THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| MARK LEBLANC, <br><br> Plaintiff, <br><br> v. <br><br> MID CENTURY INSURANCE COMPANY, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [7] PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING [13] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 2:24-cv-00848-DBB-CMR <br><br> District Judge David Barlow |

Before the court are the parties' cross-motions for summary judgment.[1] Plaintiff Mark LeBlanc ("Plaintiff") brought suit against Defendant Mid Century Insurance Company ("Defendant") to recover damages for an underinsured motorist ("UIM") claim. Mr. LeBlanc contends that his auto insurance policy with Mid Century includes UIM coverage for the vehicle and that certain terms in his policy that might limit such coverage constitute an invalid waiver[2] under Utah Code 31§ A-22-305.3.[3] Defendant Mid Century Insurance responds that the vehicle in question is not an insured vehicle under Plaintiff's policy and is therefore neither covered by UIM insurance nor protected under the waiver requirements of Utah Code 31§ A-22-305.3.[4]

---

[1] Pl. Mot. for Partial Summ. J. and Dec. Relief ("Pl. PMSJ"), ECF No. 7, filed Mar. 18, 2025; Def. Mot. for Summ. J. ("Def. MSJ"), ECF No. 13, filed May 9, 2025.
[2] Compl., ECF No. 1-1, filed Nov. 12, 2024.
[3] Utah Code Ann. § 31A-22-305.3.
[4] *See generally* Def. Memo. in Opp. to Pl. Partial Mot. for Summ. J. ("Def. Opp'n"), ECF No. 15, filed Jun. 9, 2025; Def. MSJ.

## UNDISPUTED MATERIAL FACTS

On March 11, 2020, Plaintiff Mark LeBlanc was involved in a traffic accident in Heber City, Utah.[5] The other driver was determined to be at fault in the collision,[6] and her insurance tendered its policy limits to Mr. LeBlanc.[7] At the time of the accident, Mr. LeBlanc worked for the Utah Labor Commission and was driving a Dodge Dakota pickup truck owned by his employer.[8] In the course of Mr. LeBlanc's work, he conducted compliance inspections at different business locations, and he was returning from such an inspection in Vernal, Utah when the collision occurred.[9]

At the time of the collision, Mr. LeBlanc had a personal auto insurance policy (the "Policy") with Defendant Mid Century.[10] On September 29, 2023, Mr. LeBlanc sent a demand letter to Defendant Mid Century seeking additional compensation through UIM coverage under his Policy.[11] Mid Century responded on November 14, 2023 with a letter denying coverage and explaining that the Dodge Dakota truck driven by Mr. LeBlanc at the time of the accident did not meet the definition of an "insured vehicle" under his Policy and was also specifically excluded from UIM coverage under the Policy because it was "provided him for his regular use" by his employer.[12]

---

[5] Police Report, ECF No. 7-2, filed Mar. 18, 2025, 6.
[6] *Id.*
[7] Def. Opp'n 1–2; Demand Letter, 1.
[8] Plaintiff's Recorded Statement (Recorded Statement), ECF No. 14-1, filed Jun. 9, 2025, 2.
[9] *Id.* at 3–4.
[10] Auto Insurance Policy (Policy), ECF No. 7-4, filed Mar. 18, 2025, 3; Def. Opp'n 2.
[11] Notice of Underinsured Motorist Claim (Demand Letter), ECF No. 7-3, filed Mar. 18, 2025, 1; Def. Opp'n 3.
[12] Mid Century Claim Outcome Letter (Claim Outcome Letter), ECF No. 7-5, filed Mar. 18, 2025, 3; Def. Opp'n 2–3.

Mr. LeBlanc filed his Complaint against Mid Century, and it was subsequently removed to this court on November 12, 2024.[13] On March 18, 2025, he filed a Partial Motion for Summary Judgment contending that the clauses in his insurance policy limiting UIM coverage for damages arising out of use of a car that has been made available for regular use violate Utah Code 31§ A-22-305.3 and are unenforceable.[14] Mid Century then filed its own Motion for Summary Judgment on May 9, 2025, arguing that the Dodge Dakota truck involved in the accident does not qualify as an "insured vehicle" for which coverage is required under the policy.[15] It is undisputed that the Dodge Dakota truck is not listed as a covered vehicle on the declarations page of the Policy.[16]

**"Your Insured Car" Definition**

The Policy defines the phrase "Your insured car" to include: (1) a "vehicle described in the Declarations" of the policy or a car that replaces a described vehicle, (2) an additional car that the insured acquires ownership of during the policy period, (3) an attached trailer, (4) a substitute vehicle temporarily used in the place of a described vehicle that is being repaired or serviced, and (5) "Any other private passenger car, utility car, or utility trailer not owned by or furnished or available for regular use by you or a family member."[17] Additionally, two provisions relating specifically to UIM coverage are relevant.

---

[13] Notice of Removal, ECF No. 1, filed Nov. 12, 2024.
[14] Pl. PMSJ 5¬6.
[15] Def. MSJ 5.
[16] Pl. Opp'n 4; Policy, ECF No. 7-4, 3.
[17] Policy, ECF No. 7-4, 7; *see also* Pl. Opp'n 6.

**UIM Coverage Provision**

In the section titled "Coverage C-1 Underinsured Motorist Coverage" under "Part II –
Uninsured Motorist and Underinsured Motorist," the Policy states, "[s]ubject to the Limits of
Liability we will pay all sums which an insured person is legally entitled to recover as damages
from the owner or operator of an underinsured motor vehicle because of bodily injury sustained
by the insured person while occupying your insured car. If other than your insured car,
underinsured motorist coverage applies only if the motor vehicle is a newly acquired or
Replacement vehicle covered under the terms of this policy."[18]

**UIM Coverage Exclusion**

In a Policy Endorsement amending certain UIM-related definitions under "Part II –
Uninsured Motorist and Underinsured Motorist," the Policy lists the following exclusion:
"Uninsured Motorist Coverage (and Underinsured Motorist Coverage if applicable) does not
apply to damages arising out of the ownership, maintenance, or use of any vehicle other than
your insured car (or your insured motorcycle if this is a motorcycle policy), which is owned by
or furnished or available for the regular use by you or a family member."[19]

As explained above, Mr. LeBlanc was in the course and scope of his employment with
the Utah Labor Division when the accident occurred.[20] At the time Mr. LeBlanc worked for the
Utah Labor Commission, it owned several vehicles, including the Dodge Dakota truck, that were
used by its employees in the scope of their employment.[21] Mr. LeBlanc stated that, during his

---

[18] Policy, ECF No. 7-4, 11; *see also* Pl. Opp'n 6.
[19] Policy, ECF No. 7-4, 38.
[20] Recorded Statement 3–4.
[21] Def. Reply Memo. Supporting Mot. for Summ. J. (Def. Reply), ECF No. 16, filed Jun. 23, 2025, 2; Recorded
Statement 4–5.

employment, the Dodge Dakota truck was "theoretically" assigned to him for purposes of monitoring the vehicle's maintenance needs,[22] but it was still available for use by any other employee who signed it out at the office where it was stored.[23] Mr. LeBlanc's use of the Dodge Dakota truck was strictly limited to business purposes, and personal use was forbidden.[24] When he used the Dodge Dakota, Mr. LeBlanc was required to track his mileage and take the vehicle in for necessary maintenance or service, but any service was ultimately paid for by his employer.[25] The Utah Labor Commission was also responsible for maintaining and paying for insurance on the vehicles it owned, including the Dodge Dakota truck.[26] Regarding his use of the Dodge Dakota truck, Mr. LeBlanc stated that he "drove it a lot."[27] His duties with the Utah Labor Commission consisted of office work and visits to different sites, and he spent approximately six hours in the office for each hour he worked in the field or at a job site.[28] Mr. LeBlanc "never went to a job site with [his] personal vehicle," and always used a fleet vehicle provided by his employer.[29]

## STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either

---

[22] Pl. Memo. Opposing Def. Mot. for Summ. J. (Pl. Opp'n), ECF No. 14, filed Jun. 9, 2025, 4; Recorded Statement 4, 10.
[23] Def. Reply 2; Recorded Statement 4, 10.
[24] Pl. Opp'n 4–5; Recorded Statement 8, 9.
[25] Pl. Opp'n 5; Recorded Statement 9, 11.
[26] Pl. Opp'n 5; Recorded Statement 10.
[27] Pl. Opp'n 4; Deposition of Mark LeBlanc (Deposition), ECF No. 13-3, filed May 9, 2025, at 36:4–5.
[28]  Recorded Statement 11; Deposition 14:9–14.
[29] Pl. Opp'n 4–5; Recorded Statement 11–13.
[30] Fed. R. Civ. P. 56(a).

way."[31] The movant "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[32] When viewing the record, the court "draw[s] all reasonable inferences therefrom most favorably to the nonmovant."[33]

**DISCUSSION**

Mr. LeBlanc claims that both the UIM coverage provision in Part II of the Policy and the UIM coverage exclusion in the Policy Endorsement constitute an invalid waiver of UIM coverage under Utah Code 31§ A-22-305.3.[34] Mid Century claims that the Dodge Dakota truck was not an "insured vehicle" under Mr. LeBlanc's policy because it is not listed under the policy's Declarations page and was furnished for his regular use, excluding it from UIM coverage under both the coverage provision and the coverage exclusion in the Policy.[35]

## I.    Waiver

Utah has enacted a statutory scheme that requires "[e]very policy of insurance or combination of policies purchased to satisfy the owner's or operator's security requirement" to include "underinsured motorist coverage . . . unless affirmatively waived."[36] An insured person can reject UIM coverage through an affirmative waiver "by signing an acknowledgment form meeting certain statutory requirements" set forth in § 31A-22-305.3(3)(b).[37] The statute also

---

[31] *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1169 (10th Cir. 2021) (citation omitted).
[32] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).
[33] *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016) (citation omitted).
[34] Pl. PMSJ 6–7.
[35] Def. MSJ 5.
[36] Utah Code Ann. § 31A-22-302.
[37] *Dircks v. The Travelers Indem. Co. of Am.*, 416 P.3d 376, 377 (Utah 2017); *see also* Utah Code Ann. § 31A-22-305.3(3)(b).

states that "[a] covered person occupying or using a motor vehicle owned, leased, or furnished to the covered person . . . may recover underinsured benefits only if the motor vehicle is: (i) described in the policy under which a claim is made; or (ii) a newly acquired or replacement motor vehicle covered under the terms of the policy."[38] The statute defines a "covered person to include "the named insured" and "any person occupying or using a motor vehicle referred to in the policy" among other persons.[39]

Mr. LeBlanc argues that the two provisions in his Policy that limit his recovery for UIM damages constitute waivers of his coverage that are facially invalid under section 305.3 because they are not signed and do not otherwise conform with the statutory waiver requirements.[40] Mid Century admits that Mr. LeBlanc never signed any waiver of UIM coverage but contends that no waiver was necessary because UIM coverage was never available for the Dodge Dakota truck in the first place.[41]

Mr. LeBlanc relies on the Utah Supreme Court's ruling in *Dircks v. The Travelers Indemnity Company of America* to support his claim that the Policy excludes certain vehicles from statutorily required UIM coverage in violation of the affirmative waiver process.[42] In *Dircks*, a plaintiff riding in a co-worker's personal vehicle while in the course and scope of his employment was injured in a car accident.[43] The employer's auto insurance policy explicitly included employee vehicles used for business under its liability coverage yet excluded those

---

[38] Utah Code Ann. § 31A-22-305.3(2)(b).
[39] Utah Code Ann. § 31A-22-305(1).
[40] Pl. PMSJ 6.
[41] Def. Opp'n 3.
[42] *Id.* at 8.
[43] *Dircks*, 416 P.3d at 377–78.

same employee-owned vehicles from UIM coverage.[44] The Court held that "any vehicle—whether owned by the policyholder or not—that is covered by a policy's liability insurance is also subject to underinsured motorist coverage under section 305.3."[45]

Dircks does not support Mr. LeBlanc's argument. First, the Policy here does not exclude any vehicle from UIM coverage that would be included elsewhere in the Policy. The Part II coverage provision offers UIM coverage for injuries sustained while in the "insured car" or in a "newly acquired or replacement vehicle."[46] Unlike the policy in Dircks that limited UIM protection to a subset of covered vehicles, Mr. LeBlanc's Policy provides UIM protection to the full range of insured vehicles otherwise covered in the Policy. The term "your insured car" is broadly defined to include all specifically described vehicles in the policy as well as several other classes of temporary or replacement vehicles.[47] It also includes any other private car used by an insured that is not available for their regular use.[48] The Part II coverage provision extends UIM protection based on this definition, thus mirroring the scope of the Policy's general coverage of any "insured car."[49] The Policy Endorsement UIM exclusion also does not alter this uniform coverage. The relevant portion only excludes UIM coverage for "damages arising" out of the use of an uninsured vehicle owned by or made available for the "regular use" of an insured individual.[50] Uninsured vehicles owned or available for regular use are already excluded from the definition of "your insured car,"[51] so they would not be included as UIM-covered vehicles in

---

[44] Id. at 378.
[45] Id. at 382.
[46] Policy, ECF No. 7-4, 11.
[47] Id. at 7.
[48] Id.
[49] Id. at 11.
[50] Id. at 38.
[51] Id. at 7.

the first place.[52] Both the Part II coverage provision and the Policy Endorsement exclusion extend UIM protection to all "insured car[s]" under the Policy,[53] so they cannot constitute a waiver of UIM coverage for any vehicle that would otherwise have been covered by the Policy's liability insurance.[54]

Second, these exclusions cannot violate Utah Code § 31A-22-305.3 because they parallel almost exactly the statutory limits established in that section.[55] Section 305.3 only permits a covered person using a vehicle owned by or furnished to that person to recover UIM benefits if the vehicle is "described in the policy under which the claim is made" or is a "newly acquired or replacement motor vehicle covered under the terms of the policy."[56] In this case, Mr. LeBlanc qualifies as a "covered person" under the statute for purposes of the Policy because he is one of the named insureds.[57] Mr. LeBlanc's Policy with Mid Century extends UIM protection to "insured car[s]" already covered while excluding uninsured cars available for "regular use"— which would not be covered as "insured car[s]" under any portion of the Policy.[58] These requirements limiting UIM protection to insured cars in the Policy simply reiterate the section 305.3 statutory prohibition on coverage for cars not "described in the policy under which the claim is made."[59] Additionally, the Policy provides UIM coverage to cars not described in the Policy as "your insured car" if they are a "newly acquired or replacement vehicle" covered under

---

[52] *Id*. at 11.
[53] *Id*. at 7, 11, 38.
[54] *See Dircks*, 416 P.3d at 382.
[55] Utah Code Ann. § 31A-22-305.3(2)(b).
[56] *Id*.
[57] Policy, ECF No. 7-4, 3; Utah Code Ann. § 31A-22-305(1)(a).
[58] Policy, ECF No. 7-4, 11, 38.
[59] Utah Code Ann. § 31A-22-305.3(2)(b).

the Policy.[60] This also follows the limiting language of section 305.3 almost exactly.[61] Therefore, the alleged UIM waivers in Mr. LeBlanc's Policy are not waivers at all; they are merely restatements of existing statutory limitations on UIM coverage.

Third, Mr. LeBlanc characterizes the Policy provisions limiting UIM coverage as an attempt to "unilaterally exclude UIM benefits in Plaintiff's policy based on the vehicle he was driving."[62] Mr. LeBlanc does not base his waiver argument on any claim that the Dodge Dakota truck should qualify as an "insured car" and would therefore be entitled to coverage elsewhere in the policy such that its exclusion from UIM coverage constitutes a waiver. Instead, Mr. LeBlanc argues that the issue of whether or not the Dodge Dakota truck was "'available for his regular use' is immaterial to the motion at hand."[63] Not so. The Utah Supreme Court has recognized that the plain language of § 31A-22-305.3(2)(b) requires that some vehicles not be protected by UIM coverage under the driver's policy even when driven by an insured person.[64] In *Dircks*, for example, the Court explained that an insured driver who uses a vehicle not covered by any portion of his auto insurance policy would not be entitled to UIM damages if he were injured while driving the uncovered vehicle, regardless of any liability coverage that may cover him personally as a named insured.[65] Therefore, Mr. LeBlanc's interpretation of Utah's statutory requirements for UIM coverage is not supported.

---

[60] Policy, ECF No. 7-4, 11.
[61] Utah Code Ann. § 31A-22-305.3(2)(b).
[62] Reply Memo. Supporting Pl. Mot. for Partial Summ. J. (Pl. Reply), ECF No. 17, filed Jun. 23, 2025, 3.
[63] *Id*. at 7 (cleaned up).
[64] *Dircks*, 416 P.3d at 382 n.7 ("section 305.3 forbids underinsured motorist coverage for a named insured who is 'occupying or using a motor vehicle owned, leased, or furnished' to the insured, unless 'the motor vehicle is described in the policy under which a claim is made.'").
[65] *Id*.

Mr. LeBlanc also points out that, because "Section 305 of the Code was adopted to benefit the insured motorist," Utah courts require that "UIM provisions be liberally construed in favor of coverage, with strict and narrow construction given to exclusions."[66] However, a federal court must assess state law claims based on the substantive law of the state and defer to any statutory interpretation given by the state's highest court.[67] The Utah Supreme Court has already interpreted the scope and application of Utah Code § 31A-22-305.3 in *Dircks*. This court will not expand this interpretation to require UIM protection to extend to vehicles that are not otherwise covered or included in an auto policy.

For these reasons, neither the Part II UIM provision nor the Policy Endorsement UIM exclusion constitute a waiver of UIM coverage that would require a signed acknowledgment under Section 305.3(3)(b).

## II.    Regular Use

In its Motion for Summary Judgment, Defendant Mid Century notes that Mr. LeBlanc's auto insurance Policy defines "your insured car" to exclude a private car that is uninsured under the Policy and that is available for the Insured driver's "regular use."[68] Mid Century claims that the Dodge Dakota truck involved in the accident was a private car provided or furnished for Mr. LeBlanc's "regular use" and was not an "insured car" under the Policy.[69] Therefore, because the Policy's UIM coverage only extends to "insured car[s]" and explicitly excludes vehicles

---

[66] Pl. PMSJ 10 (*quoting Garner v. Cincinnati Ins. Co.*, No. 2:24-CV-00378-TC-DAO, 2025 WL 461852, at *11 (D. Utah Feb. 11, 2025)).
[67] *Etherton v. Owners Ins. Co*., 829 F.3d 1209, 1223 (10th Cir. 2016).
[68] Def. MSJ 4; Policy, ECF No. 7-4, 7.
[69] Def. MSJ 4; Claim Outcome Letter, ECF No. 7-5, 3.

furnished for regular use, Mr. LeBlanc would not be entitled to UIM coverage for damages incurred while driving the Dodge Dakota truck.[70]

In his opposition, Mr. LeBlanc disputes that the facts supply evidence of regular use.[71] In the alternative, Mr. LeBlanc also asks the court to defer Defendant Mid Century's Motion for Summary Judgment pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.[72]

### A.    The truck and other vehicles were furnished for Mr. LeBlanc's regular use.

As noted previously, Mr. LeBlanc's Policy with Mid Century provides UIM protection for injuries sustained by the named insured while in an 'insured car.'[73] The Policy also specifically states that UIM protection does not apply to damages arising out of the use of a "vehicle other than your insured car" that is "furnished or available for the regular use" of the insured.[74] The parties do not dispute that the Dodge Dakota truck is not listed under the declarations page of Mr. LeBlanc's policy.[75] Additionally, neither party contends that Mr. LeBlanc acquired ownership of the truck during the policy period or used the truck as a temporary substitute for a named vehicle that needed repair or servicing.[76] Therefore, the only way that the Dodge Dakota truck could qualify for UIM coverage under the Policy as an "insured car" is if it was a "private passenger car . . . not owned by or furnished or available for regular use by" Mr. LeBlanc.[77] Alternatively, if the Dodge Dakota truck did not qualify as an "insured car" under the policy and was furnished for Mr. LeBlanc's "regular use," it would be explicitly

---

[70] Def. MSJ 5.
[71] Pl. Opp'n 9.
[72] *Id.* at 11.
[73] Policy, ECF No. 7-4, 11.
[74] *Id.* at 38.
[75] Pl. Opp'n 4; ECF No. 7-4 at 3.
[76] *See generally* Def. MSJ; Pl. Opp'n.
[77] Policy, ECF No. 7-4, 7.

excluded from UIM coverage under the Policy.[78] Accordingly, Mr. LeBlanc's ability to recover UIM damages for his injuries sustained while driving the Dodge Dakota truck rests entirely on whether the truck was "furnished or available" for his "regular use."

"Regular use" limitations are common in the auto insurance industry to "prevent an increase in the amount of risk an insurance company undertakes to insure without a corresponding increase in premium paid."[79] Under Utah law, the phrase "regular use" has been interpreted to embody "use that is marked by a pattern of usage or some frequency of usage rather than a use that is unfettered or without limitation."[80] The "question of whether a vehicle has been furnished or is available for an insured's regular use hinges mostly on determining 'whether there is a consistent pattern of use or availability of the other vehicle,' and 'a minimum level of frequency' of use."[81]

In *Valentine v. Farmers Insurance Exchange*, the Utah Court of Appeals found that an insured driver could not recover under the terms of her personal policy because the vehicle she was injured in was furnished and available for her regular use.[82] The vehicle in question was a delivery truck owned by the insured's employer and used by the insured to make deliveries in the course of her employment.[83] As a "matter of routine," the insured would drive her personal car to work and then use the delivery truck—or one of the other four vehicles in her employer's fleet—

---

[78] *Id*. at 38.
[79] *Valentine v. Farmers Ins. Exch*., 141 P.3d 618, 622 (Utah Ct. App. 2006); *see*, *e.g*., *Benjamin v. Plains Ins. Co.,* 650 F.2d 98, 100 (5th Cir. 1981) (per curiam) ("To cover a non-owned vehicle regularly used by an insured would cause the insurance company to have to insure vehicles for which the insured did not pay insured premiums.").
[80] *Valentine*, 141 P.3d at 622.
[81] *Id*. (quoting *Safety Ins. Co. v. Day,* 836 N.E.2d 339, 345 (Mass. App. Ct. 2005)).
[82] *Id*. at 623.
[83] *Id*. at 620.

to make deliveries.[84] Though the insured driver did not have "unfettered access" to the truck and could not use it for personal purposes, the truck—or another, similar fleet vehicle—was always available for her to make deliveries.[85] This level of use was held to constitute a "definite pattern and uniform course of conduct" that was "frequent as opposed to occasional" and thus qualified as regular use.[86]

Mid Century argues that Mr. LeBlanc's use of the Dodge Dakota likewise demonstrates a "pattern and uniform course of conduct" that qualifies as regular use.[87] To support its claim, Mid Century points out that Mr. LeBlanc "never went to a job site with his personal vehicle," always drove an employer-supplied vehicle, and specifically drove the Dodge Dakota "a lot."[88] Because Mr. LeBlanc always used either the Dodge Dakota truck or another employer-owned vehicle to complete frequent "work-related tasks," Mid Century argues the use and availability of the vehicle was "regular."[89]

In contrast, Mr. LeBlanc seeks to distinguish his use of the Dodge Dakota truck from the use of the delivery truck in *Valentine*.[90] He points out that the keys to the Dodge Dakota were available for all Utah Labor Commission employees who might need it, so it was not always available to Mr. LeBlanc, even when he required a vehicle for an inspection.[91]

---

[84] *Id.* at 621.
[85] *Id.* at 624–25.
[86] *Id.*
[87] Def. MSJ 6.
[88] *Id.* at 6.
[89] *Id.* at 4
[90] Pl. Opp'n 9.
[91] *Id.*

Because Defendant Mid Century is the movant in this Motion for Summary Judgment, the court must draw all reasonable inferences from the record in favor of Mr. LeBlanc.[92] Even doing so, the undisputed facts indicate that the Dodge Dakota truck, or another one of the vehicles owned by the Utah Labor Commission, was furnished or available for Mr. LeBlanc's regular use. Regular use of a vehicle requires (1) a "consistent pattern of use or availability" and (2) a "minimum level of frequency."[93] Both are present here.

First, the Dodge Dakota truck and other work vehicles were consistently used or available for Mr. LeBlanc's use. Indeed, Mr. LeBlanc was "*always* provided" a fleet vehicle for his work needs, and he "*never* went to a job site with [his] personal vehicle.[94] Though his need for a fleet vehicle may not have been a daily occurrence like the insured driver's use in *Valentine*, Mr. LeBlanc's use of the fleet vehicles was customary whenever he went to a job site rather than some "special use."[95] Furthermore, the Policy's prohibition on "regular use" includes vehicles "furnished or available" for such use,[96] which is consistent with *Valentine*'s defining regular use as a "consistent pattern of use or availability."[97] In other words, daily use of the Dodge Dakota truck or other fleet vehicles is not necessary to establish "regular use" so long as there is a consistent pattern of availability.[98] In interpreting policy provisions that exclude regular use or availability, courts have considered "whether [a] vehicle or group of vehicles was regularly

---

[92] *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016) (citation omitted).
[93] *Valentine*, 141 P.3d at 622.
[94] Recorded Statement, 12–13 (emphasis added).
[95] *Valentine*, 141 P.3d at 622.
[96] Policy, ECF No. 7-4, 7.
[97] *Valentine*, 141 P.3d at 622.
[98] *Id.*

*available* for use" rather than "how often a vehicle, or fleet of vehicles, was actually used."[99] A pattern of availability does not require an employee to have unrestricted access to a vehicle without any limitation on the purpose or time of use.[100] Instead, courts have looked at factors like whether the vehicle was physically accessible, whether keys were easily accessible, whether advance permission was required, and what conditions if any were placed on the use.[101]

Here, a pattern of regular availability or use exists based on Mr. LeBlanc's own description of his work. The vehicles were available every time he needed them for work purposes, and in the course of his employment he never took his personal vehicle to a jobsite.[102] Mr. LeBlanc could not make personal use of the fleet vehicles.[103] However, the keys to the vehicles were hanging in an office where employees like Mr. LeBlanc could sign them out whenever it was necessary for their work.[104] If an employee's preferred vehicle was already signed out that day, the employee would sign out another one.[105] The vehicles were readily and consistently available to him within the work context whenever a need for them arose. This demonstrates a consistent pattern of regular use and availability.

Mr. LeBlanc suggests a narrower interpretation of "regular use," emphasizing that the specific Dodge Dakota truck in question was not always available when he needed a vehicle because any employee could sign it out when needed.[106] But "regular use" is not so limited. In

---

[99] *Progressive Direct Ins. Co. v. Yousif*, No. CIV09838D, 2010 WL 3959623, at *7 (W.D. Okla. Oct. 8, 2010) (quoting *Prudential Property & Casualty Insurance Co. v. Armstrong*, 2004 WL 603416, at *2 (E.D.Pa. Mar. 24, 2004)).
[100] *Valentine*, 141 P.3d at 622.
[101] *Yousif*, No. CIV09838D, 2010 WL 3959623, at *8.
[102] Recorded Statement, 12–13.
[103] *Id*. at 8, 9, 12.
[104] *Id*. at 4.
[105] *Id*.
[106] Pl. Opp'n 9–10.

*Valentine*, the court specifically recognized that insured driver's pattern of conduct establishing regular use consisted of using the delivery truck involved in the collision "or one of the other four vehicles [her employer] provided."[107] The driver's regular use was not tied to any specific vehicle, but rather to the entire fleet provided for her use as an employee in the course and scope of her job.[108] Such an interpretation makes sense. If a "regular use" analysis were directed solely to individual vehicles, an employee who had access to a fleet of vehicles could circumvent insurance limitations merely by using a different car every time the need arose. This explains why many courts have found that "vehicles furnished by employers to employees for work purposes have been furnished or made available to employees for their regular use, thereby excluding the vehicles from coverage under the employees' personal automobile insurance policies."[109]

Second, the record indicates that Mr. LeBlanc used work vehicles with some frequency. Utah law does not provide an exact figure or proportion to identify sufficient frequency, but the frequency requirement can be read in the broader context of the ordinary meaning of the phrase "regular use," which "connotes use that is consistent with a recurring pattern or uniform course of conduct or dealing."[110] Mr. LeBlanc argues that the only indication of the frequency of his use is his statement that he used the Dodge Dakota truck "a lot."[111] Even if this statement alone were not enough to establish frequency of use, it does not stand alone. Mr. LeBlanc never used his

---

[107] *Valentine*, 141 P.3d at 620.
[108] *Valentine*, 141 P.3d at 623 ("Nicole's use of the Parts Plus truck—or a similar vehicle from the Parts Plus fleet—was consistent with a definite pattern and uniform course of conduct.").
[109] *Id*.; *see, e.g., Dardar v. Prudential Prop. & Cas. Ins. Co*., 739 So. 2d 330, 334 (La. Ct. App.), writ denied, 750 So. 2d 195 (La. 1999) ("In employment situations, the family automobile policy is not designed to cover an employer's vehicle regularly used by the employee for employment purposes.").
[110] *Id*. at 622.
[111] Pl. Opp'n 10.

personal car to visit a job site in the field, instead using an employer-owned vehicle every time.[112] When asked about the frequency of his work in the field versus in the office, Mr. LeBlanc responded that he spent around one hour in the field for every six hours he spent in the office.[113] This indicates that Mr. LeBlanc worked in the field with some regularity and used his employer's fleet vehicles every time he did so. Mr. LeBlanc's statement that he used the Dodge Dakota "a lot," taken together with his regular field-work and exclusive use of fleet vehicles for that work, shows a recurring pattern of use that meets the "minimum level of frequency" contemplated in *Valentine*.

Mr. LeBlanc correctly notes that "Utah has a longstanding commitment to '[t]he principle that insurance policies should be construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purposes of insurance.'"[114] Under this construction, Mr. LeBlanc would have the court interpret the term "regular use" in the Policy "liberally in favor of coverage."[115] However, this construction in favor of coverage only applies when "ambiguous or uncertain language in an insurance contract [] is fairly susceptible to different interpretations."[116] Such is not the case here. No reasonable jury could find that the truck and other work vehicles were not regularly used or available to Mr. LeBlanc.

### B.    FRCP 56(d)

Mr. LeBlanc asks the court to find that the undisputed facts are insufficient to show that his use of the fleet vehicles was regular.[117] In the alternative, he requests that the court defer its

---

[112] Recorded Statement, 12–13.
[113] Recorded Statement 11–12; Deposition 14:9–14.
[114] Pl. Opp'n 10 (quoting *Poulsen v. Farmers Ins. Exch.*, 382 P.3d 1058, 1060 (Utah Ct. App. 2016).
[115] Pl. Opp'n 10.
[116] *Poulsen,* 382 P.3d at 1060.
[117] Pl. Opp'n 2.

decision under Rule 56(d) pending the completion of additional discovery.[118] Rule 56(d) allows a

nonmovant to show by affidavit that "it cannot present facts essential to justify its opposition" to

a pending motion for summary judgment.[119] If the nonmovant does so, the court may "defer

considering the motion" or allow additional time for discovery.[120] In the Tenth Circuit, a non-

movant seeking deferral or additional discovery under Rule 56(d) must specify in his affidavit

"(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what

steps have been taken to obtain these facts, and (4) how additional time will enable the party to

obtain those facts and rebut the motion for summary judgment."[121] Granting additional time for

discovery may be "especially important when relevant facts are exclusively in the control of the

opposing party."[122] However, "an affidavit's lack of specificity" weighs against granting

additional time,[123] and if the "information sought is . . . merely cumulative," the court should not

grant an extension.[124]

      Mr. LeBlanc's counsel included a Rule 56(d) affidavit as an exhibit to his Memorandum

Opposing Defendant's Motion for Summary Judgment.[125] Though the affidavit lists several types

of discovery that Mr. LeBlanc would like to conduct—including "written discovery," depositions

of Mr. LeBlanc and Mid Century, subpoenas for "additional documents," and testimony from

other witnesses— it does not list any probable facts not yet available or show how additional

---

[118] *Id*. at 11.
[119] Fed. R. Civ. P. 56(d).
[120] *Id*.
[121] *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016) (quotations and alterations omitted).
[122] *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968 (10th Cir. 2021).
[123] *Id*.
[124] *Crumpley v. Associated Wholesale Grocers, Inc*., No. 16-CV-02298-DDC-GLR, 2017 WL 1364839, at *6 (D. Kan. Apr. 13, 2017) (quoting *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993)).
[125] Pl. Declaration of Counsel Pursuant to Fed. R. Civ. P. 56(d) (56(d) Affidavit), ECF No. 14-3, filed Jun. 9, 2025.

time will enable Mr. LeBlanc to obtain any particular facts.[126] Apart from these general categories of discovery, the affidavit lacks specificity other than an expectation that Mr. LeBlanc's previous coworkers could "provide information as to the regularity and availability of the vehicle" to Mr. LeBlanc.[127] But this expectation does not support granting additional time for discovery because it only contemplates interviewing past coworkers about information already in Mr. LeBlanc's possession. The person most knowledgeable about the availability of fleet vehicles to Mr. LeBlanc is presumably Mr. LeBlanc himself. If Mr. LeBlanc had additional information about vehicle availability, he could have provided it in a declaration but did not do so. Also, Mid Century, the nonmovant, would not have exclusive control or knowledge of any relevant facts regarding Mr. LeBlanc's use of and access to his employer's vehicles.

In short, Mr. LeBlanc's 56(d) affidavit lacks sufficient specificity, especially with regards to any probable facts not yet available and merely states an intention to conduct general discovery. The discovery sought also is cumulative. The facts that the affidavit does mention are those that Mr. LeBlanc already has access to because they relate to his own personal experiences with the fleet vehicles. The Rule 56(d) standard is not met.

In summary, Mr. LeBlanc has failed to show as a matter of law that the UIM provisions in his insurance policy constitute invalid waivers under Utah law or that additional discovery is necessary to determine whether Mr. LeBlanc's access to his employer's fleet vehicles qualified as regular use. Defendant Mid Century has met its burden to show that Mr. LeBlanc's access to

---

[126] *Id.* at 2 ¶ 9.
[127] *Id.*

his employer's fleet vehicles constituted regular use and that it is entitled to judgment as a matter of law.

## ORDER

Accordingly, Plaintiff's [7] Motion for Partial Summary Judgment is DENIED and Defendant's [13] Motion for Summary Judgment is GRANTED.

Signed August 15, 2025.

BY THE COURT

_____
David Barlow
United States District Judge